UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN WALKER,

                              Plaintiff,

        -vs-                                 **No. 6:17-CV-06138 (MAT)**
                                             **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                              Defendant.

## I.    Introduction

Proceeding *pro se*, plaintiff Brian Walker ("plaintiff") brings
this action pursuant to Titles II and XVI of the Social Security
Act (the "Act"), seeking review of the final decision of defendant
the Acting Commissioner of Social Security (the "Commissioner" or
"defendant") denying his applications for disability insurance
benefits ("DIB") and supplemental security income ("SSI"). The
Court has jurisdiction over this matter pursuant to 42 U.S.C.
§ 405(g).  Presently before the Court is the Commissioner's motion
for judgment on the pleadings pursuant to Rule 12(c) of the Federal
Rules of Civil Procedure.  For the reasons discussed below, the
Commissioner's motion is granted.

## II.  Procedural History

Plaintiff protectively filed applications for DIB and SSI on
April 18, 2013, both of which were initially denied.
Administrative Transcript ("T.") 60-67, 158-65. At plaintiff's
request, a hearing was held before administrative law judge ("ALJ")

Michael W. Devlin on February 24, 2015, where plaintiff appeared with non-attorney representative David Penrose.  T. 46-92.  On July 18, 2015, ALJ Devlin issued a decision in which he found that plaintiff was not disabled as defined in the act.  T. 6-19.  On January 11, 2017, the Appeals Council denied plaintiff's request for review, rendering the ALJ's determination the Commissioner's final decision.  T. 1-3.  This action followed.

## III. The ALJ's Decision

Initially, the ALJ determined that plaintiff met the insured status requirements of the Act through December 31, 2013.  T. 11.  At step one of the five-step sequential evaluation, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that plaintiff had not engaged in substantial gainful activity from July 1, 2011, the alleged onset date.  *Id*.  At step two, the ALJ found that plaintiff suffered from the severe impairments of diabetes mellitus type II, diabetic neuropathy, and obesity.  *Id*.  The ALJ further found that plaintiff had the non-severe impairments of blurry vision and status post cholecystectomy.  T. 12.  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.  *Id.*

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following

2

additional limitations: can occasionally lift and/or carry ten pounds; can frequently lift and/or carry less than ten pounds; can stand and/or walk for up to two hours in an eight hour workday; can sit for about six hours in an eight hour workday; requires use of an assistive device (e.g. a cane) to ambulate to and from the workstation; can occasionally push and/or pull ten pounds; can frequently finger bilaterally; can occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and can never climb ladders/ropes/scaffolds.  T. 13.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  T. 17.  At step five, the ALJ concluded that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff could perform. T. 18.  Accordingly, the ALJ found plaintiff not disabled.  *Id.*

## IV.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation

omitted). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

In this case, the Commissioner contends that her final decision was well-supported by substantial evidence and free from legal error. Having reviewed the record, and for the reasons discussed below, the Court agrees.

## A. The ALJ's Findings Are Supported by Substantial Evidence

The Court has considered the findings made by the ALJ at each step of the five-step sequential evaluation. The ALJ's determination at step one was favorable to plaintiff, and therefore cannot form a basis for remand.

At step two, the ALJ properly determined that plaintiff had the severe impairments of diabetes mellitus, diabetic neuropathy, and obesity. With respect to the ALJ's conclusion that plaintiff's blurry vision and his history of a cholecystectomy were non-severe, these conclusions were well-supported by the record. Plaintiff's

4

medical records showed that he underwent a laparoscopic cholecystectomy (that is, removal of his gallbladder) on February 23, 2013, as a result of acute cholecystitis. T. 255-56. The surgery was apparently without complication, and plaintiff was discharged from the hospital on February 28, 2013, with his cholecystitis having been resolved. T. 258-64. There is no evidence in the record that this surgery resulted in any lasting impact on plaintiff's ability to perform basis work activity.

With respect to plaintiff's claim that he had blurry vision, as the ALJ noted, his vision was tested on June 7, 2013, and was essentially normal. T. 307. Again, nothing in the record suggests that plaintiff's claimed blurry vision had anything beyond a minimal impact on his capacity for employment.

Turning to the ALJ's step three analysis, the Court notes that the ALJ considered whether plaintiff's impairments met or equaled a number of listings, including listings 1.02, 1.05, and 4.11. T. 12. The ALJ's analysis of these listings was appropriate, and the Court finds no error in the ALJ's conclusion that plaintiff's impairments did not meet or equal their requirements.

The ALJ's RFC finding is also supported by substantial evidence. State Agency Medical Examiner Dr. Donna Miller examined plaintiff on June 7, 2013. T. 306-309. Dr. Miller noted that plaintiff's gait and stance were normal, he did not use an assistive device, he had no sensory deficits, he had 5/5 strength

in both his lower and upper extremities, he had intact hand and finger dexterity, and there was no evident muscle atrophy. *Id.*

Nurse Practitioner ("NP") Evelyn Stelmach treated plaintiff on December 2, 2014. T. 387-90. Two months prior to this appointment, plaintiff had been told to follow up with a vascular specialist, but had failed to make an appointment. T. 389-90. Plaintiff wanted a note to be excused from work, but NP Stelmach declined to provide one and noted that she believed he could "most likely . . . work with restrictions." T. 390.

NP Dina Rotoli saw plaintiff on December 31, 2014. T. 325-36. NP Rotoli noted that plaintiff was having some issues with shoes, after having had the little toe on his left foot amputated. T. 325. NP Rotoli opined that plaintiff was stable from a vascular standpoint and observed that both of his feet were intact without ulcerations. *Id*. She further opined that plaintiff could work once he obtained a new shoe, which she gave him one month to do. *Id*. NP Rotoli observed that while plaintiff did experience intermittent pain in his foot, it was not overly bothersome. *Id*. The ALJ appropriately relied upon the opinions of NPs Stelmach and Rotoli in concluding that plaintiff's impairments were not disabling. *See, e.g., Baron v. Astrue*, 2013 WL 1245455, at *26 (S.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 2013 WL 1364138 (S.D.N.Y. Mar. 26, 2013) (nurse practitioners are "other sources" whose opinion the ALJ may consider in "determining the degree of plaintiff's functional limitations").

6

The ALJ also appropriately assessed plaintiff's credibility. "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Hargrave v. Colvin*, 2014 WL 3572427, at *5 (W.D.N.Y. July 21, 2014) (internal quotation omitted). In this case, the ALJ determined that plaintiff was less than fully credible because he had not been compliant in taking his medications, he had failed to comply with recommended treatment (including monitoring his blood sugar, following up with referrals, and seeking diabetic shoes for his left foot), and had been uncooperative with his providers when they attempted to take his medical history. T. 14. The ALJ further noted that plaintiff had made statements about his medical history that were contradicted by his medical records. T. 14-15.

An ALJ may properly take into account a history of non-compliance with medication or treatment recommendations in assessing credibility. *See, e.g, Nicholson v. Colvin*, 2015 WL 1643272, at *7 (N.D.N.Y. Apr. 13, 2015) ("The ALJ properly considered Plaintiff's failure to comply with medication treatment as prescribed as a factor weighing against her credibility, particularly because she had continued counsel from her treatment providers to maintain the medication regimen."). It was also appropriate for the ALJ to take into account plaintiff's

7

inconsistent statements. The ALJ's factual conclusions are amply supported by the record, and the Court has no basis on which to disturb his credibility findings.

With respect to the ALJ's step four conclusion, the ALJ found that plaintiff was unable to perform any past relevant work. T. 17. This determination was favorable to plaintiff, is supported by the record, and does not provide a basis for remand.

Finally, at step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff could perform. T. 18. This conclusion was supported by substantial evidence. Vocational Expert ("VE") Julie Andrews testified at the hearing that an individual with of plaintiff's age education, and past relevant work, and with plaintiff's RFC, could perform jobs existing in substantial numbers in the national economy, including the representative jobs of order clerk, label pinker, and surveillance system monitor. T. 45-46. The VE's testimony is sufficient to support the ALJ's conclusion that there exists potential "substantial gainful employment suited to [plaintiff's] physical and vocational capabilities." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983).

In sum, and having reviewed the record in full, the Court finds that the ALJ's decision applied the appropriate legal standard and is based on substantial evidence. As such, there is no basis for this Court to remand the matter to the Commissioner.

**B.** **The Additional Information Submitted by Plaintiff does not Warrant Remand**

Plaintiff has attached to his complaint in the instant matter certain information that was not in the record before the ALJ. Specifically, plaintiff has attached: (1) a treatment note from a prosthetist dated November 9, 2016 (more than a year after the ALJ rendered his decision) indicating that plaintiff had a prescription for custom made shoes; and (2) a letter from his sister summarizing his medical history. These additional documents do not warrant remand.

A plaintiff seeking remand on the basis of new evidence "must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied[,] and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide [plaintiff's] application differently." *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). The new evidence presented by plaintiff fails to meet this standard. The prosthetist treatment note is from a period outside the relevant time frame, and simply reiterates a fact that was amply established by the existing record - namely, that plaintiff needs specialized shoes. Nor does the letter from plaintiff's sister provide new information, but simply presents a layperson's understanding of

9

plaintiff's medical history.  There is no reasonably possibility that this letter would have caused the ALJ to decide the instant matter differently.  As such, the Court finds that the new evidence submitted by plaintiff is not a basis for overturning the Commissioner's final determination.

## V.    Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket No. 11) is granted. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED**.


**s/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    December 19, 2017
          Rochester, New York.